We'll move on to the second case of the day, SelectSun GmbH v. Porter, Inc., Appeal 18-3149. And we'll hear first from Mr. Guzzi. Good morning. May it please the Court, I'm Martin Guzzi with K&L Gates, representing the plaintiff appellant SelectSun. The district court's erroneous holding sets a bad public policy, shifting the burden on monitoring an apparent agent's acts and representations from the principal to the buyer. The plaintiff, SelectSun, here spent more than $1 million ordering a formula-made boat—formula is the trade name used by the defendant, Porter— that he cannot use legally within his home waters within the European Union because it is missing the mandatory CE certification. The plaintiff returned the boat to the agent, whom the principal, Porter, Inc., the defendant expressly directed him to deal with. Counsel, I just want to make sure that I understand the evidence of apparent authority here. So, as I understand it, the district court found three facts cutting in your client's favor. The fact that he was working at the formula booth at this boat show, that he had the brochures with the formula property, and then when he decided to cut out the middleman himself and contact Porter directly, that Porter said, we can't deal with us, but you can deal with Zurheisen and buy the boat from him. And then cutting against was this language in the contract giving all the warranties, manufacturer's warranties, transferring them to your client. Am I right just on the facts and what we're dealing with? Your Honor, that's, I think, a correct summary of what the district court held. Under Gallant, the district court needs to consider all acts and representations that were made by the agent, whether direct or indirect, and relate to manifestations that originate from the defendant, the seller of the boat, Porter. The district court imposed a time cutoff at the time that there was a first reducing to writing that did not yet include the plaintiff's select son, but another party. There were additional manifestations under Gallant the district court should have considered. Not only was it the use of the trademarks and trade names that Zurheisen Poker Run Boats was allowed to use, and not only was it the brochures that Zurheisen Poker Run Boats was allowed to use, Porter also placed Zurheisen in a position to facilitate a meeting with the seller in January 2013. It put Zurheisen Poker Run Boats in a position to deliver the boat in the name of Formula Boats, and it also placed Poker Run Boats Zurheisen in a position to forward a confirmation of full payment from Porter's director of international sales, the intermediary of International Nautique. At Nautique, there's a further agent that Porter availed itself of in the solicitation, placement, processing, and fulfillment of the order. That's Lila Kitzinger, and she operates under a business card that contains the title international sales. So why was it clearly erroneous for the district court to say the relevant question is who he entered into the contract with? And so that's the date at which I'm looking at Porter's representations to your client. The plaintiff does not enforce what got reduced to writing the four corners of that October 1, 2012 document, but an enforceable promise by the seller in Indiana, Porter Inc., to deliver a CE-certified boat, as it was contained on the brochures, as it was contained on the attachment that sets forth the standard European delivery items, including a CE certificate. In fact, the document that got reduced to writing in October 1 contains indirect manifestations of Zurheisen's and Poker Run Boats' authority to bind the principal, Porter Inc. It sets forth that the payments need to be made directly to the U.S. manufacturer's account. It sets forth that the majority of the payments are to be wired directly to the manufacturer, and it sets forth certain access to the boat for Porter Inc. to use at certain boat shows. Gallant does not ask for a time cutoff. Quite the opposite. In Gallant, not only did it matter that the insurance policy was bought in the past, but also subsequent conduct, including phone calls, that confirmed the validity of the policy by an agent. Mr. Agassi, here's what confuses me about this. As I read the briefs and read what happened in the district court, your client seemed to approach this as an all-or-nothing matter, meaning that he was either going to recover zero or he was going to recover the $1 million figure, the purchase price of the boat, the financing costs, and the cost of that lift. And for the life of me, I couldn't figure out why he took an all-or-nothing position. What I thought I would see, and I just haven't, and I want you to correct me if I'm wrong, is that he had a different position. And his position was, I want to recover for the value of this not being CE certified. I want to recover for the cracked gel coating. I want to recover for the cracked appliances, et cetera. But I think I'm wrong on that. I think he asked for a million or zero. Is that right? Your Honor, the requested relief was for the more than $1 million spent, including the purchase price of the boat, the boat lift that was obtained in order to operate it, and the financing charges that selects on incurred. And so we know that the warranty, the manufacturer's warranty, passed to him, correct? We know it by virtue of the contract, and we know it by the way the restatement of agency works? Correct, Your Honor. Okay. So under that warranty, it may be that he can recover damages, right? Damages for the cracked gel coating, et cetera. But you don't seem to be arguing for that. The damages here, even under a breach of warranty theory, are including for the full purchase price. We point to Jerry Alderman Ford Sales, where the value, the fair market value of the good warranted, as opposed to the fair market value of the good when accepted, is the difference that's recoverable. The problem you have, though, is that the record contains evidence of an estimate that to make the boat CE certified, or I don't know what the right words are, certifiable, that there was an estimated cost. I think that guy Mike Boyd put that estimate at $2,000. And as best I can tell, that's uncontested. Your Honor, the court did indeed point to certain testimony that was given at trial when considering the ongoing proceedings against International Nautic. That is when the court analyzed erroneously that Wayne Porter had testified, something my learned colleague corrected this to be Mike Boyd. And it pointed to the expert's testimony of Mr. Villalon, whose scope of expertise was to determine what the cause of the gel coat cracks were. Mr. Villalon never saw the boat. But is there not the $2,000 estimate is in the record as evidence, is it not? It is an erroneous finding because what is also in the record. Did you put on any contrary evidence? There were attempts made to actually fix the exhaust of the boat and make it come out above the waterline so that it may be within CE certifiable standards. And those efforts were unsuccessful. Where do we find that evidence? It was testified by the expert, Ketna Plaintiff's expert. And the district judge seems not to have addressed that and credited other testimony that said this could be taken care of pretty easily. Again, it's not a question of whether this is undisputed. It's a question of whether the district judge's finding was clearly erroneous.  That's not my question. I'm asking right now to follow up on the damages issue. Your Honor, the damages issue is informed by what is agreed amongst the parties, that the use of a boat without proper CE certification is illegal. Right, but it's easy to fix according to the findings of the district court based on the expert testimony. So what's wrong about that? The firm or the definite and firm conviction we ask the Court of Appeals to hold is that the evidence relied on with a $2,000 price tag is not supported by the evidence that was seduced at the trial. That means the weighing of the fact that Judge Springman made is contrary to what was testified in front of her at trial. Well, she had testimony about how much it would cost to fix the exhaust system to make it CE certifiable, and then she had the contrary testimony that you put on and she picked. I don't see how we're in a position to say that was clearly erroneous. She had an estimation of a number that Defendant Porter used without any itemization. It included relying on testimony that was given by an expert that had never seen the boat as opposed to a plaintiff's expert who has actually seen the boat and seen the efforts made to correct the boat. I thought Michael Boyd worked at Porter. Am I wrong about that? Mr. Boyd did indeed work at Porter, and he was actually informed that the efforts had failed to put the exhaust system in place. Michael Boyd was the source of the $2,000 estimate, correct? The District Court, I think, just had a typo. I think the District Court attributed that to Wayne Porter. Correct. But I think it's actually Michael Boyd. You're correct, Your Honor, and the Defendant has pointed this out in its briefing here in front of the Board of Appeals as well. So why is that, as Judge Hamilton asked, why is that estimate or the District Court's reliance on the estimate, why does that reflect clear error? Because it lacks the itemization of the work that has to be done, in particular how piping is placed within the hull for the exhaust to come out underneath the waterline as opposed to above the waterline. There's simply no place in the hull for this to be conducted, which is what plaintiff's expert has pointed out. See, what this does, though, is it brings me back. So I think, all right, it's not $2,000. I don't know what it is. Maybe it's a little bit more than $2,000, but it's not a million. That's what this all-or-nothing approach is what throws me off. You went in and you presented no evidence on damages as best I can tell. The evidence presented was the costs incurred by the plaintiff in purchasing the boat and illegally operating it because of lack of knowledge of But it suggests the product, that's not the way Indiana warranty law works. It suggests the product is worth literally zero. It doesn't even have scrap value. And we know that's not true. He operated it for much of 2013. Whether the boat can be fixed for $2,000 to be CE certifiable is an issue that stands to be tested and wasn't part of the trial in front of Judge Springman. Why isn't that a failure of proof on your part? I mean, you had a trial, right? We're not talking about summary judgment where you have a dispute of fact or something. You had a trial, bench trial. The proof presented to the court did include that it was impossible to revert the exhaust pipes in a way to make it... Okay, so we have conflicting testimony. Could I ask you, Mr. Cousy, in your reply brief, I think you tell us about the applicable standard of review that because the issues are important here, we should apply de novo review. Could I misunderstand that? Our submission, Your Honor, is that the question of apparent authority and agency here in this case shifts the burden to a buyer to test the acts and representations of the principle. Am I correct that your brief tells us that because the issues have insignificant public policy implications, we should apply a de novo standard of review? That's extraordinary. Maybe I misunderstood. I'm sorry. I'd like to add, in addition to the bad public policy the decision sets,  in her conclusions of law, that a reasonable person, plaintiff, select son, could not have concluded that Zuhrhausen poker run boats acted with apparent authority. Well, I understood that to be a conclusion based on her findings of fact. You're relying on... There are a couple of Indiana cases that decide in favor, as a matter of law, of finding apparent authority. The ones I'm aware of are Gallant Insurance and, I think, Cain Family Farm. But everybody else, all the other cases say issue of fact, goes to the trier of fact, Judge Moody said this needs to go to a trial, and that's why you had that. So that would ordinarily lead me to think that de novo review is not applicable here. We indeed rely on Gallant and SORT, which was quoted by the District Court and Quality Foods and Pepkowski, all of which deal with the question whether there was a reasonable belief as a question of law. Didn't all of those other than Gallant and Cain Family Farms, though, say there is an issue of fact as to whether apparent authority is established? They rejected. When they ruled in favor of people asserting that there was apparent authority, they were reversing summary judgments the other way or affirming trial results in their favor. Your Honor, our submission is that the underlying facts establishing the reasonable belief are a question of fact that are reviewable clearly by clear error. However, the legal conclusion on whether it was reasonable for the third person to believe that the person's making the manifestations and acts and representation. You're saying reasonableness is a conclusion of law? The reasonable belief of the person receiving the manifestations, yes, is the question of law where the law imposes the reasonableness. Counsel, it's very clear that in federal court, when you have a mixed question involving an application of law to fact that's not a constitutional question, after a bench trial, that the standard of review is clear error. Are you trying to draw something from Indiana cases and argue? I mean, is your argument that the state standard of review on appeal governs here and you think you can prove that in Indiana the state standard of review would be de novo? I'm having trouble figuring out how you even get to your argument. We do not talk about imposing a different standard in the Indiana state system versus the federal system. The question of law here is the placing of the agent into a position to perform acts and to make representations that appear reasonable to a third person to become a sufficient manifestation that the person was clothed in apparent authority. Maybe you are disputing this point. Are you disputing that she correctly stated the legal standard, Judge Springman? Judge Springman relied on SORT, which Judge Moody relied on. That's the correct restatement of the applicable law. Your argument is that she incorrectly applied that standard to the facts of your case. The error is the incorrect legal conclusion. The application of the law to the facts of your case led to an incorrect legal conclusion. Correct. That's clear error review. And there is our submission that there is a definite and firm conviction to be found that an error has been made because Judge Springman stopped considering manifestations beyond the three that she relied on in her analysis. Under Gallant, the totality, all of the acts and representations that the agent made and the manifestations that originate from the principle need to be considered, including everything from the solicitation through the placement, through the processing, and even the fulfillment of the order, all of which established a direct relationship between the plaintiff, Selig Zahn, and the defendant, manufacturer and seller, Porter, Inc. Mr. Cusi, could I ask you to tell us the status of the German litigation between your client and Zurhausen? Your Honor, I do not represent Selig Zahn in the German litigation. I am not informed whether it is ongoing or has resulted in a judgment already. Who has possession of the boat at this point? It is Porter's agent, Poker Run Boats, Mr. Zurhausen, in Germany. Thank you. Who holds title to the boat, legal title? Who insures it? The boat has been registered in the German registry upon acceptance of the delivery, and it has been returned, and the title, I think, is still held by Plaintiff Selig Zahn, to my information. Okay. Thank you. All right. We'll hear now from counsel for defendant, Ms. Moses. Thank you, Your Honor. Good morning. My name is Karen Moses. I represent the defendant, athlete, Porter, Inc. I would like to begin, Your Honors, on the issue of damages. Initially, I'd like to clear up what I believe is an incorrect or misunderstanding as to the record. There was no contrary evidence produced at trial as to the cost to repair the boat to make it CE certified. There was testimony of Mike Boyd, who testified, as Judge Scudder stated, it would be $2,000. Was there testimony that it was impossible? No, Your Honor. I believe what Mr. Guse was referring to is that subsequent to the entry of judgment by the trial court, there were additional proceedings involving the plaintiff and the defaulted defendant, International Nautic. I checked the docket last week to see what was going on in the case below, and on Thursday or Friday of last week, the trial court entered an order relating to a subsequent affidavit that had been filed by the plaintiff. We were not served because we're no longer a part of that case below, but it was an affidavit from the plaintiff's expert, Hubertus Kettner, who testified during our trial. But in that affidavit, Mr. Kettner asserts that it would be impossible to do that work, but Mr. Kettner did not testify to that at trial. There was no contrary testimony at all on that issue at trial. There was no cross-examination of Mr. Boyd at trial on that issue. His testimony stands uncontroverted as to the cost and the ability to modify the boat to make it CE certified. As a matter of fact, Mr. Boyd testified that they had done that work previously and that it was a fairly simple procedure. Pop something in and pop something out was essentially what Mr. Boyd testified. And I would also like to address Judge Scudder's point as to damages. Your Honor, the court is exactly correct. There was no information, no evidence presented whatsoever in the trial court as to any damage other than the million dollars. So am I right to take away from the briefs here that the plaintiff really did approach this as an all or nothing? I'm either going to get a million or I'm going to get zero? That is exactly correct, Your Honor. As a matter of fact, we raised that issue prior to trial. We filed a motion to eliminate prior to trial because there had been no evidence in discovery or in any other manner relating to damages suffered. The plaintiff's expert did not testify in that point. There was literally no information as to repair costs, nothing. And so the gel cracking and the refrigerator bracket breaking and this and that happening with interior furnishings, there was no effort just under the manufacturer's warranty to recover damages? No, Your Honor, nothing. And Mr. Boyd testified that Porter would honor that warranty on the boat, that if there were damages to the boat that had been caused other than through driver abuse, that would be covered under the warranty. I'm glad you said that. That's part of the reason I couldn't figure it out because Porter, in fact, has honored some warranty claims. Correct. Porter, I believe there were eight claims in the spring, sort of summer of 2013, and Porter honored all of them, of course, yes. And in the letter that Mike Boyd sent to the plaintiff in response to their first complaints about the boat, Mr. Boyd said, we think this is owner abuse from what we can see, but regardless, let's work this out. We'll figure this out. And 10 days later, the plaintiff filed a suit. Counsel, can you address Mr. Schweiger's argument about the timing of the relevant actions? I mean, as I read Gallant, it's talking about actions that the principal takes up until the point that the other party is bound. Correct. Which I think explains Judge Springman's decision to draw the line there. That is exactly right, Your Honor. Judge Springman was very clear that she took the date of September 29th, which was the date that the offer was provided by Mr. Zurhausen to Mr. Schweiger. In our brief, we mentioned that we thought that probably should have been October 1st, because that's the date of the actual contract that was executed by the parties. And the court made it very clear that because Mr. Schweiger's position was that he was relying on these alleged manifestations in believing that Pocahontas Boats was speaking, essentially, in place of Porter, that that should stop the date that he was bound, that no representations past that date would be relevant because there would be no reliance by Mr. Schweiger. There's bound and then there's bound, right? It's a million dollars. It's an international transaction. The plaintiff obviously is not trusting Zurhausen's credit because he wants to make sure that money gets directly to the manufacturer and that the manufacturer is assuring you get a clean title to this when you buy it, right? Well, I will say that that is Mr. Schweiger's position during trial. Yes, Your Honor. It seems pretty simple and practical, right? It would be practical, but I question whether that's the reality of the situation, since Mr. Schweiger had no problem contacting Porter when he alleges that he wanted to get a better deal, but at no time during the process did he ever contact Porter. But that is his position. That is the position he took during trial. And all the representations that are in the contract were between Mr. Schweiger and Mr. Zurhausen for poker and both. So let me – this is an extraordinary kind of case just because it's a custom-made million-dollar yacht. Let's suppose we're talking about a sports car from an American manufacturer. I order one, and I want to get the supercharged engine and various other customized details. And it turns out what I'm asking for means that the car won't be street legal. And I get that delivered, and then I go to register it, and I can't register it. That seems like the kind of situation where the manufacturer is responsible for telling me that I'm about to deliver you, sell you through our dealers, our established dealers, a car that you can't drive on the streets. I'd say there are significant differences between that situation and the situation before the court today. In that situation, I don't know enough about it, first of all, but I don't know what the car is to be used for, is it supposed to be street legal, and do I know that as a manufacturer, has that been told to me, is that the purpose of this purchase? If you're a Ford motor company, probably, yeah. If you're selling for off-road track racing, you'll know it, right? So let's assume the assumption is this is going to be supposed to be street legal. But I, as a naive buyer, don't realize that I've asked for a combination of features that will prevent it from being. And in your situation, if you're dealing with Ford, when you do that, then perhaps Ford has an obligation to tell you that they don't... I'm dealing directly with a Ford dealer and submitting my custom order through them. Does the dealer have an obligation to tell you, as the purchaser? And does the manufacturer? No, I don't think the manufacturer does, because the manufacturer is simply fulfilling an order. Does the dealer, who's dealing with the purchaser directly, hopefully the dealer knows what's going on and why that vehicle is being purchased, then yes. In this case, wasn't there, I think her name was Lori Snyder, who worked at Porter? Yes. That's right. Didn't she raise this question of the CE certificate with International Nautic? Yes. Saying, like, this isn't going to be certifiable. Are you sure? And then came back and said, are you really sure? Yes, that's exactly right. That happens. They have, it just flew out of my head, the configurator, I believe it's called, at Porter, it's a program that they use. And when they install the options that come in from any dealer anywhere, it will tell them whether it will work on the boat. And so when Lori installed the exhaust and CE certificate, it told her, no, you can't do that. That won't work in the European Union. And so Lori notified International Nautic that that would not work. And there was an enormous amount of back and forth going on. And there were emails in which International Nautic essentially said, the end user is either going to register in a non-EU country, which was Croatia at that point in time, or they'll do a fix later on, don't worry about it, that's what they want. So is this a situation where International Nautic, they've disappeared? The couple, the burgers, they've just disappeared. It seems like maybe they were to blame for much of this, but Porter's stable and is the one from which Schweiger hopes to collect? Is that kind of how this is? It does appear that Porter is the defendant because it's a stable company. There's nothing in the record that really states what happened to International Nautic. I know Wayne Porter testified that the last he had heard, they were done and gone. I know that they did simply fail to respond in this case. I don't know whether that actually occurred, if they did close up shop and leave, but Wayne Porter said he had heard that. So yes, International Nautic is gone, and Porter is the only remaining stable entity. Does Porter ever sell directly overseas, or do they always work through dealers? The latter, Your Honor. They used to years ago, and they stopped doing it for this type of situation. There's just too much involved in it. If there are no further questions on damages, the only other issue I'd like to address is the issue raised relating to apparent authority and the plaintiff's position or the plaintiff's argument that Porter placed Poker Run Boats in a position where it could process orders and therefore that somehow convinced German customers  Just initially, Porter did not place Poker Run Boats in that position. Poker Run Boats was a company that sold boats. They sold formula boats while they were selling other boats. That had nothing to do with Porter. And Poker Run Boats did not process orders. If that were the situation, I think it would be a much different case that we're looking at. Poker Run Boats entered into a very sophisticated, very detailed contract with Mr. Zurhausen relating to the creation of this custom boat. And I agree with one issue that Mr. Goosky raised, which is that this can't be looked at in a vacuum. And one of the issues that needs to be considered is the contract that the parties executed and the terms of that contract. It was very sophisticated for a contract between two people sitting down in an office and drafting something on the fly. And part of that was because Mr. Schweiger is an attorney. And so that contract had venue provision, choice of law provision, a provision that allowed substitution of the parties. And that warranty provision that the court referenced previously, where Poker Run Boats transferred the warranty for the boat to Slex Sun, and Slex Sun accepted that warranty. It is that provision more than any others that demonstrates that the parties were aware of the fact that Poker Run Boats and Porter were very separate and not simply one the agent of the other. There are no further questions? Thank you. All right. Ms. Goosky, how much time left? Just take two minutes. Thank you, Your Honors. It is Porter's acceptance of the benefits that informs the unjust enrichment claim. According to Wayne Porter at the trial, a sales transaction isn't done until it is delivered and paid. The internal confusion within International Nautic, which operated as the Director of International Sales, and Lila Kitzinger in particular, who operated as the International Sales Coordinator, cannot exonerate Porter from not having fulfilled its promise to deliver a CE-certified boat. The acceptance of the benefit is the acceptance of the payments that plaintiff Slex Sun made to the U.S. manufacturer, and we submit seller of the boat. The allegation that Porter sold boats through a dealer is opposite, as Your Honor referred to, from a Ford dealership, where there are Fords standing in the lot, as opposed to a custom-made, built-to-order $1 million yacht that involves three different locations. The German representative, which is what Porter called Zurhausen and Poker Run Boats when Mr. Schweiger had actually reached out to Porter in Indiana, and it includes the International Nautic, whom Wayne Porter calls expressly the Director of International Sales, and it includes Lila Kitzinger, who processes the order internally within the formula organization. Unless you have further questions, that concludes my submission. Thanks to both counsel, the case is taken under advisement.